UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHRISTIANA GODIN, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 5:18-cv-1212 |
| § | |
| PRIME ACCEPTANCE CORPORATION § | |
| and ALLIANT CAPITAL MANAGEMENT, § | |
| LLC, § | |
| § | |
| Defendants. § | |

**PLAINTIFF'S COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND FOR MONETARY AND PUNITIVE DAMAGES**

Plaintiff CHRISTIANA GODIN ("Ms. Godin" or "Plaintiff") files this complaint against Defendant PRIME ACCEPTANCE CORPORATION ("Defendant Prime") and Defendant ALLIANT CAPITAL MANAGEMENT ("Defendant Alliant") (collectively, "Defendants"), and, in support thereof, states as follows:

**INTRODUCTION**

1. This Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x; the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p; the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code. §§ 392-392.404; and the Deceptive Trade Practices Action ("DTPA"), Tex. Bus. & Com. Code §§ 17.41-17.63 as relates to repossession of a vehicle purchased by Plaintiff.

2. The FCRA imposes duties on furnishers of information to credit reporting agencies (CRAs) to report consumer information with "maximum possible accuracy." One of the purposes of imposing this duty is to ensure public confidence and the stability of the banking system. 15 U.S.C. § 1681(a)(1). In addition, finance companies and employers rely on information provided by CRAs. Another purpose therefore at the heart of the FCRA is to preserve the good names of consumers.

3.      In applying for adequate housing, employment, and transportation, consumers are at the mercy of information contained in computer databases, under the control of CRAs. When inaccurate information is contained in those databases and consequently reported to numerous creditors and employers, the name of the consumer is systematically, institutionally, and uncontrollably ruined, as occurred here.

4.      The inaccurate information takes on a life of its own and requires exhaustive efforts on the part of consumers to correct, a long, merry-go-round ordeal involving numerous and time-consuming communications with various agencies and parties, the consumer dealing with each agency and party referring the consumer to each other same agency and party, and the consumer filing numerous reports, complaints, and documents with still more agencies, all to no avail. This merry-go-round ordeal can take years, after which time the consumer is not just financially damaged, but also emotionally, physically, and socially damaged as well.

5.      As alleged in this Complaint, Defendant Prime, without any notice of default, repossessed Plaintiff's vehicle and sold it at an auction. After the auction sale, Defendant failed to provide Plaintiff notice of a loan deficiency amount.

6.      Defendant Prime however and Defendant Alliant, its assignee, reported a loan balance to CRAs. Defendant Prime furnished information to a CRA, that Ms. Godin owed a debt related to her vehicle. Defendant Prime Acceptance Corp. was the original creditor of the debt who sold, assigned, and/or transferred the debt to Defendant Alliant Capital Management, LLC. Subsequently, both Defendants refused to validate or provide information on the alleged debt to Ms. Godin.

7.      On information and belief, the accounting of the loan balance and deficiency amount was false.

8.      As was her right under the FCRA, Ms. Godin disputed the debt and requested that Defendant Prime or Defendant Alliant validate the debt.

9.      Defendants illegally ignored her request, illegally ignored verification of the debt, and, instead, illegally reported the debt to the CRAs. The debt was in fact invalid.

10. The negative report therefore affected Ms. Godin's credit score and her ability to utilize her credit in various ways, including applying for credit for adequate housing, employment, and transportation.

11. This action seeks declaratory, compensatory, statutory, and punitive damages, and costs and reasonable attorneys' fees for Ms. Godin against Defendants for their negligent, willful, and knowing violations of the FCRA, FDCPA, TCPA, and the DTPA.

## PARTIES

12. At all relevant times, Ms. Godin is a natural person who resides in San Antonio, Texas.

13. At all relevant times, Defendant Prime Acceptance Corp. ("Prime") is a Utah corporation engaged in debt collection throughout the state of Texas. Process may be served on Prime Acceptance Corp. at Pacific Registered Agents, Inc., 17350 State Highway 249, Suite 220, Houston, Texas 77064.

14. At all relevant times, Defendant Alliant Capital Management, LLC ("Alliant"), is a New York limited liability company engaged in the business of debt collection throughout Texas, including in the city of San Antonio, Texas. Defendant Alliant generally transacts business in the city of San Antonio because it engages in debt collection there. Process may be served on Alliant Capital Management, LLC at Corporation Service Company, 80 State Street, Albany, New York, 12207.

15. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendants.

## JURISDICTION AND VENUE

16. As this action arises under federal and state laws, jurisdiction lies pursuant to 28 U.S.C. §1331 and 20 U.S.C. § 1367(a).

17. Venue lies in the United States Court for the Western District of Texas pursuant to 28 U.S.C. § 1391 because Defendants generally transacts business in this District and is therefore subject to the jurisdiction of this Court.

18. All conditions precedent to the filing of this lawsuit have been complied with.

## FACTUAL ALLEGATIONS

19. On August 3, 2016, Godin entered into a Retail Installment Contract ("Contract") with Champion Pre-Owned Cars and Tructs d/b/a Chamption Motor Co. ("Champion"), for the purchase of a used 2012 Dodge Journey SXT Sport Utility 4D Vehicle ("Vehicle").

20. The total amount agreed to for the purchase of the Vehicle pursuant to the Contract was $24,950.20. This amount included finance charges, tax, title, and license.

21. At the time of purchase the Vehicle was still covered under its original manufacturer's warranty ("Warranty") from FCA Group US LLC ("FCA"). The Warranty covered repairs to cars, regardless of the maintenance history.

22. In addition, Godin also purchased a Vehicle Service Contract ("Service Contract") with Portfolio for $650 at the signing of the Contract. The Service Contract covered service repairs performed twelve months from the date of sale and repairs performed within 12,000 miles from the date of sale of the Vehicle.

23. Five days after purchase, on or about November 7, 2016, the Vehicle's engine overheated.

24. Godin took the Vehicle to Ingram Park Chrysler Dodge Jeep Ram ("Ingram"), a local Dodge warranty service provider that claimed the sludge found in the engine was due to the car maintenance history and refused to repair the Vehicle.

25. Ford refused to honor the Warranty and Service Agreement due to the car history that showed a failure to maintain the Vehicle.

26. This left Godin with an inoperable Vehicle, with no means of repairing it and making it operable. In addition, Godin was liable still liable for the full amount of the loan on an inoperable Vehicle purchased only a few months earlier.

27. The Vehicle was left at Ingram's repair shop.

28. The Contract was assigned to Prime. Accordingly, and under the FTC Holder Rule, Prime is subject to all claims raised against Champion, the Seller, up to the full amount of the loan originated.

29. Subsequently, on January 30, 2018, Godin received a Notice of Repossessed Vehicle from Prime. The letter did not note the date of repossession of the Vehicle.

30. Godin did not receive any notice of default.

31. Defendant Prime repossessed the Vehicle.

32. Ms. Godin received neither a statement of account or notice of any past due amount at any time from either Defendant Prime or Defendant Alliant.

33. After receiving the Repossession Notice from Defendant Prime, Ms. Godin told Defendant Prime that she never received any notice of the Debt, as required by law.

34. Ms. Godin demanded a copy of the Debt and any loan deficiency amounts she may be liable for.

35. Despite never providing Ms. Godin a loan deficiency amount, Defendant Prime reported the disputed and invalid debt to the CRAs, thereby causing a decrease in Ms. Godin's credit score.

36. Defendants reviewed the Debt and could not point to any actual statement of any account, bills, or past-due notices.

37. Ms. Godin requested Defendant Prime provide her documents proving she owed the Debt. She specifically requested a debt validation, as she was entitled to under the law, as to the deficiency amount.

38. Since the initial communication with Ms. Godin, Defendant Prime did not provide validation documents, much less within the 5-day or 30-day prescribed timeframe for validating a debt. Under the law, Defendant Prime should have responded to Ms. Godin's request for a debt validation within 30 days of the request; however, Defendant Prime had served no debt

validation and no notice of deficiency amount owed, yet reported an amount owed to Godin's credit.

39. Even though Defendant had not verified the Debt with Ms. Godin, Defendant represented to the CRAs that the Debt was verified. Defendant also did not represent to any CRA that the Debt was in dispute, as required under the law. The CRAs accordingly did not represent the Debt as in dispute.

40. The Debt was affecting Ms. Godin's ability to obtain credit

41. In around approximately September 2017, Ms. Godin contacted the CRAs and Defendant Prime to dispute the reporting. Ms. Godin hoped Defendant Prime could help her fix her false credit report.

42. Defendant Prime later removed the invalid debt from Ms. Godin's report and sold Ms. Godin's debt to Defendant Alliant, which also refused to provide Ms. Godin with disclosures required by law, including any notice of statement regarding the amount of any deficiency owned after it repossessed her Vehicle.

43. The issue appeared to have finally been resolved. With Defendant Prime temporarily removing the Debt, Ms. Godin thought that surely now that the debt would be deleted from her credit report.

44. On January 11, 2017, Defendant Prime and Defendant Alliant continued to unlawfully refuse to validate Ms. Godin's alleged loan deficiency or to provide Ms. Godin with any information regarding the Debt. Ms. Godin was in a dispute with the dealership from which she purchased the Repossessed Vehicle and need to know what amounts Defendants were claiming against her.

**COUNT ONE
VIOLATION OF THE FDCPA
15 U.S.C. §§ 1692-1692P**

45. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

46. 15 U.S.C. §§ 1692-1692p regulates debt collectors in their efforts to collect debts. Congressional findings and declaration pursuant to 15 U.S.C. § 1692 found that there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which contributed to "personal bankruptcies, to marital instability, to the loss of jobs, and to the invasions of individual privacy." Congress also found that existing laws and procedure for redressing these injuries were inadequate to protect consumers.

47. Plaintiff is a "consumer" pursuant to 15 U.S.C. 1692a(3).

48. The Debt is a "debt" pursuant to 15 U.S.C. § 1692a(5).

49. Defendant Prime and Defendant Alliant are each a "debt collector" pursuant to 15 U.S.C. § 1692a(6).

50. Defendant violated multiple sections of 15 U.S.C. 1692-1692p, including specifically 15 U.S.C. § 1692g for failing to send notice of the debt to Ms. Godin and failing validate a debt after Ms. Godin requested the debt validation several times.

51. Defendant also violated 15 U.S.C. § 1691e(2) in falsely representing the character, amount, and legal status of the Debt.

52. Defendant also violated 15 U.S.C. § 1691e(8) in communication to the CRAs credit information it knew or should have known was false, including the failure to communicate that the Debt was disputed by Ms. Godin.

53. Defendant violated 15 U.S.C § 1692g(a-b) by failing to validate the Debt within the prescribed time or at any time and failing to provide notification required for a disputed debt.

54. Pursuant to 15 U.S.C. 1692k, Ms. Godin is entitled to actual and statutory damages, court costs, and attorney's fees.

### COUNT TWO
### VIOLATION OF THE TDCPA
### TEX. FIN. CODE §§ 392-392.404

55. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

56. Tex. Fin. Code §§ 392-392.404 regulates debt collectors collecting debt in the state of Texas.

57. In collecting on an alleged debt that was not incurred, never noticed to Ms. Godin, in failing to verify the debt, and in reporting an unverified debt to the CRAs, Defendants violated Tex. Fin. Code § 392.303 prohibition against using unfair or unconscionable means in collecting a debt.

### COUNT THREE
### VIOLATION OF THE DTPA
### (TEX. BUS. & COM. CODE §17.41-63)

58. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

59. Pursuant to Tex. Fin. Code §§ 392.404(a), a violation of the TDCPA is a deceptive trade practice under Subchapter E, Chapter 17, Business & Commerce Code, and is actionable under that subchapter.

60. Pursuant to Subchapter E, Chapter 17, Business & Commerce Code, Ms. Godin is entitled to actual/economic damages, emotional and/or mental anguish damages, exemplary/punitive damages, and attorney's fees and costs.

61. Additionally, Plaintiff seeks an award of discretionary additional damages in an amount not to exceed three times the amount of economic damages for Defendants' conduct committed knowingly and/or an amount not to exceed three times the amount of economic and mental anguish damages for Defendants' conduct committed intentionally. Specifically, Ms. Godin seeks $20,931 in treble damages. This is the amount of the invalid Debt pursed against Ms. Godin trebled.

62. Plaintiff seeks reasonable and necessary attorney's fees in this case through and to the time judgment is entered and for any post-trial or post-judgment appeals, to be detailed through a statement of services submitted at the appropriate time.

## COUNT FOUR
## VIOLATION OF THE FCRA
## 15 U.S.C. § 1681S-2

63. Plaintiff incorporates by reference the above paragraphs of this Complaint as though fully set forth herein.

64. 15 U.S.C. § 1681s-2 of the FCRA describes the duties of furnishers to provide accurate information to CRAs.

65. Plaintiff is a "consumer" under 15 U.S.C. § 1681a(b)-(c) because Plaintiff is an individual.

66. As contemplated by 15 U.S.C. § 1681a(b)-(c), Defendants are both persons.

67. Defendants violated 15 U.S.C. § 1681s-2(a)(1)(A) prohibition against reporting information with actual knowledge of errors because it knew or had reasonable cause to believe that the information was inaccurate. Specifically, the numerous notifications by Ms. Godin imparted knowledge and/or reasonable cause to believe that the information was inaccurate.

68. Defendants violated 15 U.S.C. § 1681s-2 (a)(1)(B) prohibition against reporting information after notice and confirmation of errors. In numerous instances, Ms. Godin contacted Defendants, at their specified addresses, to dispute information about her furnished by Defendants to a CRA, and to notify Defendants that the information was inaccurate. In numerous instances, Ms. Godin informed Defendants that the Debt, as reported by the CRAs on her credit report, was inaccurate.

69. Despite having proof from the consumer to the contrary, in numerous instances, Defendants continued to furnish inaccurate information to a CRA relating to Ms. Godin.

70. Defendants violated 15 U.S.C. § 1681s-2(a)(2) because they determined that the Debt was inaccurate and failed to promptly notify the consumer reporting agency of that determination and provide to the agency with any corrections to that information, or any additional information, that is necessary to make the information provided by the person to

agency complete and accurate, and thereafter furnished to the agency any of the information that remained incomplete and inaccurate.

71. Defendant violated 15 U.S.C. § 1681s-2(a)(3) in knowing that the debt was disputed by Ms. Godin and in failing to provide to a CRA that the debt was disputed.

72. Defendants violated 15 U.S.C. § 1681s-2(a)(8)(e) because after receiving notice of numerous disputes and debt validation requests by Ms. Godin, Defendants failed to conduct an investigation with respect to the disputed information, review all relevant information provided by the consumer with the notice, complete an investigation within a 30-day period, and promptly notifying the CRAs.

73. Defendants also violated 15 U.S.C. § 1681s-2(b) in that after receiving notice of a dispute of the Debt from Equifax, Defendants failed to conduct an investigation, review all relevant information, report the results to the CRAs, and promptly modify, delete, and/or permanently block the reporting of the false Debt with the CRAs.

74. Defendants also violated in 15 U.S.C. § 1681s-2(7) in failing to inform Ms. Godin about negative information in the process of, or already placed on, a consumer's credit report within one month.

75. Defendants' violations were not just negligent, but willful.

Pursuant to 15 U.S.C. 1681, Ms. Godin is entitled to actual or statutory damages, attorney's fees, and court costs, as well as punitive damages for willful violations.

## DEMAND FOR JURY TRIAL

76. Plaintiff hereby demands trial by jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff CHRISTIANA GODIN requests that Defendants PRIME ACCEPTANCE CORP. and ALLIANT CAPITAL MANAGEMENT, LLC each be cited to appear and answer herein and upon final hearing hereof, Plaintiff have judgment of and against Defendants as follows:

(1) an award enjoining Defendants from reporting and collecting the Debt;

(2) a declaratory judgment be entered that the conduct of Defendants complained of herein violated the FCRA, FDCPA, TCPA, and DTPA;

(3) an award for all actual damages, exemplary damages, emotional/mental anguish damages, all attorney's fees, costs of court, and pre-and post-judgment interest at the highest lawful rates;

(4) an award of $20,931 treble damages pursuant to the DTPA;

(5) an award of statutory damages pursuant to the FDCPA;

(6) an award of punitive damages in the amount of $100,000 pursuant to the FCRA;

(7) an award of costs and reasonable attorney's fees pursuant to the FCRA, FDCPA, TCPA, and DTPA;

(8) an award of discretionary additional damages in an amount not to exceed three times the amount of economic damages if Defendants' conduct is found to have been committed knowingly; or an amount not to exceed three times the amount of economic and mental anguish damages if Defendants' conduct is found to have been committed intentionally; and

(9) Any such other and further relief as may be just and proper.

Dated: November 20, 2018

Respectfully submitted,

By: /s/ Ramona Ladwig
Ramona Ladwig
State Bar No. 24092659
Anthony P. Chester
State Bar No. 24092253
**HYDE & SWIGART**
1910 Pacific Ave, Suite 14155
Dallas, TX 75201
Phone: (214) 880-6362
Fax: (800) 635-6425
Email: ramona@westcoastlitigation.com

*Attorneys for Plaintiff*